**Alan R. KAHN, Plaintiff,**

v.

**SALOMON BROTHERS INC., Paul W. Mozer, Thomas Murphy, John Gutfreund, and Thomas Strauss, Defendants,**

**and**

**Discount Corporation of New York, Nominal Defendant.**

**No. 92 C 2293.**

United States District Court, E.D. New York.

Feb. 11, 1993.

Silverman, Harnes, Obstfeld & Harnes (Nancy A. Lester, Sidney B. Silverman, of counsel), New York City, for plaintiff.

Cravath, Swaine & Moore (Frederick A.O. Schwarz, Jr., David E. Sternberg, of counsel), New York City, for defendant Salomon Bros. Inc.

Davis Polk & Wardwell (James W.B. Benkard, of counsel), New York City, for nominal defendant Discount Corp. of New York.

MEMORANDUM AND ORDER

NICKERSON, District Judge:

Plaintiff, a stockholder of nominal defendant Discount Corporation of New York (Discount), brought this suit derivatively on

behalf of Discount against defendants—Salomon Brothers Inc (Salomon) and four of its officers and directors—in New York Supreme Court, Queens County, alleging they tortiously interfered with Discount's prospective business relations and advantage.

Salomon and Discount removed the action to this court pursuant to 28 U.S.C. § 1441(b), asserting that the complaint's alleged violations of United States government rules governing Treasury auctions raised a federal question.

Kahn has moved pursuant to 28 U.S.C. § 1447 to remand this action to state court contending that the complaint does not raise any federal claim and hence removal was improper. He requests costs and attorneys' fees under § 1447(c) and sanctions against Salomon and Discount under Fed. R.Civ.P. 11.

Salomon and Discount oppose the motion.

## I.

The complaint alleges in substance the following.

Salomon engaged in trading Treasury Bills, Notes and Bonds (Treasuries), which it purchased from the United States government at weekly auctions. Starting in July 1990, defendants violated Federal rules prohibiting bids for more than thirty-five percent of the Treasuries offered at any one auction by submitting false and unauthorized bids. Specifically, Salomon purchased eighty-five percent of the two-year Treasuries sold at an auction held May 22, 1991 thereby enabling it to control the market and artificially raise the price.

Prior to the May auction Discount had entered into agreements with its customers to sell the Treasuries it expected to purchase at that auction. Salomon's purchase of eighty-five percent of the Treasuries prevented Discount from acquiring them at the May 1991 auction, forcing it to purchase them in the secondary market at a higher price. Discount lost money when it then resold them to its customers at the lower price set earlier in the agreements.

In its papers, Salomon admits that in August 1991 it disclosed that at certain auctions defendant Paul W. Mozer, then head of its Government Trading Desk, "improperly bid for and acquired Treasury securities for Salomon's account."

In the wake of Salomon's disclosure, numerous lawsuits were filed against it. On May 20, 1992, pursuant to a settlement with the United States government, Salomon established a fund of $100 million, to be administered by an appointee of the United States District Court for the Southern District of New York, for the payment of private claims against Salomon.

More than thirty cases brought by individuals and companies injured by Salomon, including nominal defendant Discount, have been consolidated before Judge Robert P. Patterson in the Southern District in order to "eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary." *In Re Salomon Bros. Treasury Sec. Litig.*, 796 F.Supp. 1537 (J.P.M.L.1992) (transferring case brought in Northern District of Illinois to the Southern District of New York).

By litigating in state court, Kahn seeks to avoid this coordinated attempt to resolve all claims against Salomon.

On October 7, 1992, the Judicial Panel on Multidistrict Litigation (the Panel) conditionally ordered this case transferred pursuant to 28 U.S.C. § 1407 to the Southern District of New York and assigned to Judge Patterson on the grounds that it "involves questions of fact which are common to the actions previously transferred" and assigned to Judge Patterson. *Kahn v. Salomon Brothers, Inc.*, E.D.N.Y. No. 92 CV 2293, J.P.M.L. No. 933, Conditional Transfer Order (October 7, 1992).

The Clerk of the Panel informs this court that Kahn moved to vacate this order, and a hearing was held before the Panel on January 29, 1993. On February 3, 1993, the Panel deferred its decision on the motion for thirty days in order to afford this court the opportunity to rule on the remand motion before it.

## II.

■ An action may be removed to federal court if it is "founded on a claim or right arising under the Constitution, treaties, or laws of the United States." 28 U.S.C. § 1441(b). In determining whether the action arises under federal law, the court ordinarily looks only at the issues raised in the complaint. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987).

But if by "artful pleading" a plaintiff has disguised as a state claim one whose " 'real nature ... is federal,' " the court may look behind plaintiff's characterization. *Travelers Indemnity Co. v. Sarkisian,* 794 F.2d 754, 758 (2d Cir.), *cert. denied,* 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 253 (1986) (quoting 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure,* § 3722, at 270 (2d ed. 1985)).

Although this ruling is most commonly made when federal law has preempted plaintiff's state claims, a case is removable whenever "the only remedy available to plaintiff is federal, because of preemption or otherwise, and the state court necessarily must look to federal law in passing on this claim...." *Nordlicht v. New York Tel. Co.,* 799 F.2d 859, 862 (2d Cir.1986), *cert. denied,* 479 U.S. 1055, 107 S.Ct. 929, 93 L.Ed.2d 981 (1987) (citations omitted).

On a motion for remand the court may look more skeptically at a plaintiff's characterization of the law where the plaintiff may be seeking to avoid the federal forum to which defendant is entitled. *See* Wright, Miller, & Cooper, *supra,* § 3722, at 279.

Kahn argues that this case should be remanded because the complaint raises only a state tort claim and could not state a federal claim because the federal Treasury rules that defendants violated do not support a federal right of action.

Salomon and Discount assert that they properly removed the present action because federal law is a necessary element of Kahn's tort claim. Alternatively, Salomon and Discount argue that Kahn's artfully pled state claim is a federal claim in disguise. They contend that because the complaint alleges conduct that violates federal antitrust or securities laws the court should treat the complaint as raising these federal claims.

Both parties agree that the federal Treasury rules limiting the maximum tender and purchase to thirty-percent of Treasuries offered at a given auction do not provide a private right of action. These limits were promulgated by the Treasury Department through press releases issued on July 12, 1990 and September 8, 1981 pursuant to 31 C.F.R. §§ 306–91. *Treasury Sets Bid Limits on Marketable Security Auctions,* Public Debt News, Dep't of Treasury, 1990 SEC LEXIS 3926, July 12, 1990 (limiting maximum bid to 35%); *Treasury Announces Weekly Bill Offering and Increases Maximum Award Limitation,* Treasury News, Dep't of Treasury, 1981 SEC LEXIS 2375, Sept. 8, 1981 (setting maximum purchase at 35%).

These releases do not suggest a purpose of Congress to establish a private claim to enforce the thirty-five percent limits. *See, Daily Income Fund, Inc. v. Fox,* 464 U.S. 523, 104 S.Ct. 831, 78 L.Ed.2d 645 (1984) (finding no private right of action under Investment Company Act).

Enforcement of these limits is apparently left to the discretion of the Treasury Department or other federal agencies. Counsel for Salomon notes that the Securities and Exchange Commission (SEC), the Department of Justice's Antitrust Division (Antitrust) and the United States Attorney's Office for the Southern District have all investigated Salomon's bidding at Treasury auctions. The SEC and Antitrust brought civil suits against Salomon and the United States Attorney brought a criminal suit, since discontinued.

Asserting the lack of a federal claim and saying that the rules stating the thirty-five percent limit lack the formality to constitute a "law," Kahn nevertheless says he has a state claim under these rules.

■ Kahn describes only minimally his state claim for interference with business relations, citing one case in his brief, *Guard–Life Corp. v. S. Parker Hardware*

*Mfg. Corp.,* 50 N.Y.2d 183, 428 N.Y.S.2d 628, 406 N.E.2d 445 (1980).

The court in *Guard–Life* refers to the Restatement (Second) of Torts § 766B (1977), which describes the elements of intentional interference with prospective contractual relations as follows:

One who intentionally and improperly interferes with another's prospective contractual relation ... is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of

(a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or

(b) preventing the other from acquiring or continuing the prospective relation.

Implicit in this formulation New York courts have found two prerequisites. First, that a business relationship with a third party was terminated, and second, that the defendant intentionally induced the third party to cease dealing with the plaintiff.

Kahn's complaint alleges that defendants "prevented Discount from continuing and entering into business relationships with actual and prospective customers for Two–Year Treasuries in a fair and competitive market." Kahn does not allege that any particular business relationship between Discount and its customers was prevented or discontinued.

As the Court of Appeals noted in *Burns Jackson Miller Summit & Spitzer v. Lindner,* 59 N.Y.2d 314, 335, 464 N.Y.S.2d 712, 722, 451 N.E.2d 459, 469 (1983), no New York case has recognized a cause of action for intentional interference with business where defendant has not provoked a contract breach but has merely caused "plaintiff's performance of its contracts to be more expensive or burdensome." *See also, PPX v. Audio Fidelity Enter.,* 818 F.2d 266, 270 (2d Cir.1987) (to make out a cause of action it is not enough to show that defendant interfered "with the benefits derived from" the business relationship if the relationship itself remains "unchanged").

Kahn has not alleged any conduct by defendants intentionally to induce any customer to cease dealing with Discount.

In *Burns,* where a transit strike prohibited by state law disrupted plaintiff's business, the court found no claim for intentional interference with business relations because the harm was an "incidental result" of defendants' conduct and the state legislature had comprehensively regulated labor relations yet provided no private right of action for the labor violation at issue. 59 N.Y.2d at 335, 464 N.Y.S.2d at 722, 451 N.E.2d at 469. *See also, Bevilacque v. Ford Motor Co.,* 125 A.D.2d 516, 509 N.Y.S.2d 595, 599 (App.Div. 2d Dep't 1986) (dismissal for failure to allege defendant induced third party to breach); *cf., Martin Ice Cream Co. v. Chipwich, Inc.* 554 F.Supp. 933 (S.D.N.Y.1983) (claim for tortious interference upheld where defendant negotiated directly with plaintiff's customers).

Kahn has thus not alleged the necessary elements for a state tort claim against defendants for interference with Discount's relations with its customers.

■ Although it is not clear from Kahn's complaint, he may also be claiming against defendants for interfering with Discount's "relationship" with the United States Government. The complaint alleges that but for defendants' violation of the Treasury's bidding rules, Discount would have entered into an agreement with the United States to purchase Treasuries.

■ Any tortious interference claim would necessarily rest on wrongful conduct by the defendants. Under New York law where a defendant's conduct is intended even partially to advance its own interests, the misconduct must rise to the level of fraudulent or criminal acts. *PPX v. Audio Fidelity Enter.,* 818 F.2d 266, 269 (2d Cir. 1987) (citations omitted).

Salomon admitted to violating bidding rules, promulgated by press release. As noted above, plaintiffs says these lack the formality necessary to constitute a "law" of the United States. Nothing in the Treasury Department's announcements of its bidding rules indicates that a violation of

the limits published by the Treasury Department would constitute fraudulent or criminal conduct. Plaintiff has not shown that exceeding the bidding limits without more would subject a bidder to criminal liability.

It would be anomalous for a state to provide a common law right of action for exceeding bidding limitations at Treasury auctions heavily regulated under federal securities law when federal law recognizes no such right.

Kahn alleges that Salomon acted wrongfully in that it submitted "false and unauthorized bids" and thus dominated and controlled the market. As discussed below, federal securities laws prohibit such conduct. But these laws provide a federal right of action and would subject Kahn's suit to exclusive federal jurisdiction. *See,* 15 U.S.C. § 78aa (federal courts have exclusive jurisdiction over violations of the Securities Exchange Act of 1934); Wright, Miller, & Cooper, *supra,* § 3722, at 276 ("plaintiff's failure to make specific reference in the complaint to a source of law that is clearly applicable will not prevent removal").

■ Having found no cause of action under New York law, this court turns to whether the complaint makes a federal claim. Salomon has admitted that the "nucleus of operative facts" alleged is the "same" as that stated in the cases before Judge Patterson. Those complaints allege violations of, among other statutes, the federal securities law and RICO.

The complaint here says that defendants knowingly and willfully submitted "false" bids in connection with the sale of Treasuries, allowing them to control the market and inflate the price in the secondary market. It further alleges that the inflated price of Treasuries caused Discount economic loss.

■ Under the Securities Exchange Act of 1934 (the Act), 15 U.S.C. § 78c(a)(10), the term "security" includes Treasury bonds. *Superintendent of Ins. v. Bankers Life & Casualty Co.,* 404 U.S. 6, 10 n. 6, 92 S.Ct. 165, 168 n. 6, 30 L.Ed.2d

128 (1971). Rule 10b–5, promulgated under Section 10(b) of the Act, declares it unlawful to "engage in any act ... which operates as a fraud or deceit ... in connection with the purchase or sale of a security." 17 C.F.R. § 240.10b–5. A seller or purchaser of securities harmed by knowing violations of this provision may bring a private cause of action against the offender. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); *Superintendent of Ins., supra,* 404 U.S. at 13 n. 9, 92 S.Ct. at 169 n. 9.

In a class-action suit against Salomon pending before Judge Patterson in the Southern District of New York, the lead plaintiff claims relief under Rule 10b–5 based on the same nucleus of facts alleged in Kahn's complaint. *Katz v. Salomon Brothers, et al.,* 91 CV 5471. Discount is a party to that suit. On these facts the Katz plaintiffs have also raised claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*

This court holds that although the complaint does not support a state tort claim, it alleges facts that would constitute violations of federal law.

### III.

Kahn's motion to remand is denied. His request for costs, fees, and sanctions against the defendants is also denied.

The proceedings are stayed pending the disposition of Kahn's motion to vacate the transfer order now pending before the Judicial Panel on Multidistrict Litigation.

So ordered.