Marie **BELLIDO–SULLIVAN**, Plaintiff,

v.

**AMERICAN INTERNATIONAL GROUP, INC.**, Defendant.

No. 00 Civ. 6403 (RLC).

United States District Court, S.D. New York.

Nov. 21, 2000.

The Dweck Law Firm, LLP, New York City, for Plaintiff, H.P. Sean Dweck, of counsel.

Marc E. Bernstein, New York City, for Defendant, Marc E. Bernstein, of counsel.

Connelly Sheehan Moran, Chicago, Illinois, for Defendant, P. Kevin Connelly, Rachel B. Cowen, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff Marie Bellido–Sullivan moves to remand her lawsuit to New York state court pursuant to 28 U.S.C. § 1447. She also seeks, pursuant to 28 U.S.C. § 1447(c), to recover her costs and actual expenses, including attorneys fees, incurred as a result of the alleged improper removal. Defendant American International Group, Inc., opposes plaintiff's motion to remand and to recover fees and expenses.

## BACKGROUND

Plaintiff, Marie Bellido–Sullivan, ("Sullivan") originally filed a lawsuit against American International Group, Inc. ("AIG") in the Supreme Court of the State of New York, County of New York, on August 7, 2000. (Compl. p. 1). Plaintiff's complaint contains five causes of action. The first four causes of action allege various types of employment discrimination.

The fifth cause of action alleges a breach of the employment manual by AIG.

On August 25, 2000, AIG removed this case to federal court based upon the third cause of action, where the plaintiff argues that she was terminated from her employment in part because she took two leaves of absence for medical and personal reasons. (Notice of Removal pp. 1–2). AIG contends that there is no New York cause of action for wrongful termination based upon an employee taking personal leave and that only the Federal Family and Medical Leave Act (FMLA), 29 U.S.C. § 2615, would prohibit such conduct. (Notice of Removal ¶ 2). The defendant further argues that since this cause of action exists only under the federal statute, the lawsuit involves a federal question over which the federal courts would have jurisdiction. *Id.* This is the only ground upon which the defendant alleges federal jurisdiction warranting removal to this court.

## DISCUSSION

■ As a preliminary matter, "[o]n a motion to remand, the party seeking to sustain the removal, not the party seeking remand, bears the burden of demonstrating that removal was proper." *Hodges v. Demchuk*, 866 F.Supp. 730, 732 (S.D.N.Y. 1994) (Sotomayor, J.). *See also R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir.1979). Unless that burden is met, the case must be remanded back to state court. At this stage, therefore, the party seeking remand is presumed to be entitled to it unless the removing party can demonstrate otherwise.

■ Absent diversity jurisdiction, removal is normally improper unless a federal question appears on the face of plaintiff's well-pleaded complaint. *See Franchise Tax Bd. of the State of California v. Construction Laborers Vacation Trust for Southern California, et. al.*, 463 U.S. 1, 9–10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). The removal jurisdiction of the federal courts is limited and should be "scrupulously confined." *Shamrock*

*Oil & Gas Corporation v. Sheets, et. al.,* 313 U.S. 100, 109, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). Where there is a choice of either federal or state remedies, the plaintiff is free to choose his law and his forum. *See, e.g., Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (holding that a plaintiff, "may avoid federal jurisdiction by exclusive reliance on state law"); *Hernandez v. Conriv Realty Associates,* 116 F.3d 35, 38 (2d Cir.1997); *Travelers Indemnity Company v. Sarkisian,* 794 F.2d 754, 758 (2d Cir.1986) (noting that " '[w]here plaintiff's claim involves both a federal ground and a state ground, the plaintiff is free to ignore the federal question and pitch his claim on the state ground' to defeat removal") (quoting 1A *J. Moore & B. Ringle, Moore's Federal Practice* ¶ 0.160, at 185 (2d ed.1979)).

■ AIG correctly notes, however, that a plaintiff's choice in pleading his complaint is not absolute. A defendant also has an interest in litigating the matter in an appropriate forum. As a result, it is well settled that a federal claim may not be brought in state court, disguised in the clothing of a state claim, merely for purposes of bringing it in that forum. *See Avco Corp. v. Aero Lodge No. 735, Int'l Assn. of Machinists,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). This basic tenet is referred to as the artful pleading doctrine. If a claim is artfully pleaded, the defendant may remove the lawsuit to federal court pursuant to 28 U.S.C. § 1447.

■ Nevertheless, given the general deference to the plaintiff's construction of the lawsuit, there appear to be only two circumstances in which artful pleading will justify removal.[1] The first situation is where the federal law completely preempts state law in the field. The second situation is where an issue of federal law is a necessary element of the plaintiff's state law claim and is so central to that claim that it justifies removal.[2]

Analyzing the first situation, the United States Supreme Court outlined the doctrine of complete preemption in *Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126. In *Avco,* the Court determined that a lawsuit brought in state court alleging violations by employees of a collective bargaining agreement was properly removable to federal court. The Court determined that § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, preempted state

---

1. Until recently, many courts believed that a third situation would justify removal. They derived this from a footnote in the United States Supreme Court's opinion in *Federated Dept. Stores, Inc. v. Moitie,* 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981), which approved—without elaboration—the removal of a state cause of action which was brought after the original lawsuit alleging basically the same claim had been dismissed from federal court. *Id.* at 398, n. 2, 101 S.Ct. 2424. This suggested that the defense of res judicata might justify removal. The United States Supreme Court clarified this matter in a more recent opinion. In *Rivet v. Regions Bank of Louisiana,* 522 U.S. 470, 478, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998), the Court unequivocally declared that claim preclusion or res judicata is an affirmative defense which may be made in a state proceeding, but is insufficient to justify removal.

2. Some lower courts have suggested that federal preemption is actually the only situation

which would justify removal. *See, e.g., City of Park City v. Rural Water Dist.,* 960 F.Supp. 255, 258 (D.C.Kan.1997) (holding that the artful pleading doctrine "generally has been limited to situations in which the plaintiff's state law claims have been completely preempted"). Furthermore, one leading treatise notes that it is peculiar that the United States Supreme Court's opinion in *Rivet,* 522 U.S. at 475, 118 S.Ct. 921—a decision which attempted to clarify the artful pleading doctrine—made no mention of this second type of artful pleading, declaring simply that, "[t]he artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state law claim." *See* 14B *Charles A. Wright, Arthur R. Miller and Edward H. Cooper, Federal Practice and Procedure,* § 3722, p. 445 (3rd ed.1998). While this is curious, it is doubtful that the Court would abandon its precedent in this area in such a subtle fashion. *See id.* § 3722, p. 447.

law in this field. The United States Supreme Court examined the *Avco* decision in its subsequent opinion in *Franchise Tax Board*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420. In *Franchise Tax Board*, the Court explained that even though the plaintiff in *Avco* brought a claim exclusively under state contract law, the claim was nevertheless removable because

> the preemptive force of § 301 [of the LMRA] is so powerful as to displace entirely any state cause of action "for violation of contracts between an employer and a labor organization." Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301.

*Id.* at 23, 103 S.Ct. 2841. The number of statutes that completely preempt their respective fields is limited. *See Marcus v. AT&T Corp.*, 138 F.3d 46, 54 (2d Cir.1998) (noting that "[t]he limited applicability of the complete preemption doctrine is evidenced by the fact that the [United States Supreme] Court has only approved its use in three areas:" the LMRA, the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, and certain Indian land grant rights).

■■■■ As for the second situation where federal law is necessary and central to the plaintiff's state law claims, courts will generally only allow removal where a determination of the meaning or application of federal law is required to resolve a claim created by state law.[3] *See Franchise Tax Board*, 463 U.S. at 9, 103 S.Ct. 2841 (noting that "a case 'arose under' federal law where the vindication of a right under state law necessarily turned on some construction of federal law"); *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 199, 41 S.Ct. 243, 65 L.Ed. 577 (1921). The relevant question seems to be whether the state claim may be decided without addressing the federal issue. *See Franchise Tax Board*, 463 U.S. at 9, 103 S.Ct. 2841. If the state claim can be decided without reference to the federal question, then there will not be grounds for removal. Along these lines, courts have held that where there are multiple theories of recovery, only one of which involves a federal question, removal will be improper. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 810, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988).

■■■■ Therefore, AIG must demonstrate either that the FMLA preempts state law or that it is a central and necessary component of Sullivan's state law claim. If neither is true, then AIG cannot remove the case. Although there is very little case law in the Second Circuit regarding the FMLA and there appears to be no court in this circuit which has addressed the question of removal based on the FMLA, the language of the Act clearly suggests that it is not meant to preempt state law. First, no provision of the FMLA evinces an intent by Congress that lawsuits based on wrongful termination for taking leaves of absence should be the exclusive province of the federal courts. This is in contrast to statutes which have been found to completely preempt state causes of action. The United States Supreme Court in *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), noted that ERISA completely preempted state action and justified removal because the language of its jurisdictional subsection was similar to that of the LMRA which the Supreme Court already determined completely preempted state action. The FMLA contains no such jurisdictional subsection.

---

3. The United States Supreme Court, while preserving this basic principle, added an important caveat to this analysis in *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). In *Merrell Dow*, the Court held that a state claim which relied on a federal statute to provide the relevant standard for determining tort liability could not be removed to federal court where the federal statute did not allow for a private cause of action.

Second, §§ 2651(a) and 2651(b) of the FMLA make clear that the Act will not curtail rights established by any state or local law.[4] This is further proof that Congress did not wish for federal law—and therefore federal courts—to control the field in this area of litigation. Rather, Congress intended that the FMLA serve as a complement to state law.

Additional evidence that the FMLA does not preempt state law may be found by reference to other statutes which have been interpreted in greater detail. One good example is Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, to which at least one other court has analogized the FMLA. *See Wilson v. Tarr, Inc.*, 2000 WL 1292590, at *6 (D.Or. Sept. 8, 2000) (holding that the FMLA should, like Title VII, not preempt common law claims "[b]ecause the remedies for a FMLA ... violation are less comprehensive than those available for a Title VII claim"). The comparison is appropriate, because the statutory provision relevant to preemption in the FMLA is similar to that of Title VII. *Compare* 29 U.S.C. § 2651 *with* 42 U.S.C. § 2000e–7. Title VII does not preempt state law discrimination claims which do not directly conflict with Title VII. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 101–03, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); *Humana Inc. v. Forsyth*, 525 U.S. 299, 310–11, 119 S.Ct. 710, 142 L.Ed.2d 753 (1999) (interpreting *Shaw*); *California Fed. Sav. and Loan Ass'n v. Guerra*, 479 U.S. 272, 281, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987) (noting that "Congress has indicated that state laws will be pre-empted [by Title VII] only if they actually conflict with federal law"). Indeed, if Title VII did preempt state law,

then any state employment discrimination claim (including Sullivan's cause of action for gender discrimination) would be removable to federal court.

The court is not alone in its analysis that state law is not preempted by the FMLA. The courts which have squarely addressed the issue of whether the FMLA completely preempts state law and therefore justifies removal have generally found that it does not. A district court in Maryland, for example, found that the FMLA did not preempt Maryland wrongful discharge law. *See Danfelt v. Board of County Comm'rs of Washington County*, 998 F.Supp. 606, 611 (D.Md.1998). It noted that there was no indication that Congress intended for the FMLA to preempt state law and that there was no evidence "demonstrating a conflict between [the FMLA] and Maryland law of wrongful discharge." *Id.* The court went further to hold that removal was improper even though the plaintiff may have to rely on the FMLA as a standard for establishing his wrongful discharge claim under Maryland law.[5] Maryland wrongful discharge law would apparently look to the FMLA as a standard of conduct in determining liability. The court reasoned that even if the state cause of action that relied upon the FMLA "arose under" federal law, the fact that there were other independent state causes of action contained in the complaint which could provide relief barred removal. *Id.* at 609–10 (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988)).

Other courts have also found that the FMLA does not preempt state action. *See, e.g., Findlay v. PHE, Inc.*, 1999 WL

---

4. Section 2651(a) of the FMLA states: "Nothing in this Act or any amendment made by this Act shall be construed to modify or affect any Federal or State law prohibiting discrimination on the basis of race, religion, color, national origin, sex, age or disability." Section 2651(b) of the FMLA adds: "Nothing in this Act or any amendment made by this Act shall be construed to supersede any provision of any State or local law that provides greater

family or medical leave rights than the rights established under this Act or any amendment made by this Act."

5. The plaintiff in *Danfelt* actually alleged a state wrongful discharge claim "based on a violation of the [FMLA]" in his complaint. *Danfelt*, 998 F.Supp. at 607.

1939246, at *3 (M.D.N.C. April 16, 1999) (remanding a case to state court even though the plaintiff's state court claim relied in part on the FMLA, finding that, "[b]y its own terms, the FMLA does not preempt related state claims, and no part of the statute evinces an attempt by Congress to 'occupy the field'"); *Wilson v. Tarr, Inc.*, 2000 WL 1292590 (D.Or. Sept.8, 2000) (holding that the FMLA neither preempted nor precluded a common law wrongful discharge claim).[6]

Since the FMLA does not preempt state law, AIG can only remove the case under the artful pleading doctrine if the FMLA is a necessary and central element of Sullivan's third cause of action. This is not the case. Sullivan has not referred to the FMLA in her complaint, and the FMLA should not be a necessary component of her claim under New York common or statutory law. In other words, New York courts will not need to look to the FMLA to determine whether AIG's conduct violated the New York Human Rights Law. As mentioned earlier, even state claims which refer specifically to the FMLA as a standard are not necessarily removable. *See, e.g., Danfelt*, 998 F.Supp. 606. The court is therefore satisfied that the FMLA is not a central or necessary element of the plaintiff's claim.

AIG never contends, however, that the FMLA preempts state law or that it is a central and necessary component of Sullivan's state law claim. It argues instead that there is no New York state law regarding termination for taking leaves of absence and, therefore, the only potentially successful avenue for the plaintiff is the FMLA. The court disagrees. The court finds that Sullivan may have a claim under New York law, and it is therefore unnecessary to reach the issue of whether the absence of a state cause of action would affect the analysis regarding federal jurisdiction warranting removal to this court.

The plaintiff claims that AIG's conduct in discharging her because of her absences violated, "the New York Human Rights Law as contained within the Executive Law of the State of New York, the New York City Administrative Code and the common law." (Compl.¶22). Sullivan, however, does not cite to any specific statute or case that provides the basis for this assertion in her complaint or in her memorandum supporting this motion.

Nevertheless, the court finds that it is possible for such a claim to succeed under New York state law. There is precedent that an employer's treatment of an employee regarding his leaves of absence may be grounds for a discrimination suit under the New York Human Rights Law. For example, if AIG treated Sullivan differently from other employees who had taken leaves of absence because she was a member of a protected class, there would be grounds for a discrimination claim. *See, e.g., Matter of Jericho Union Free School Dist. v. New York State Human Rights Appeal Bd., et. al.*, 97 A.D.2d 762, 468 N.Y.S.2d 393 (2d Dept.1983) (holding that a pregnant teacher should be permitted to take sick leave to the same extent as other teachers suffering from a temporary physical disability). Furthermore, if her leaves of absence were for medical reasons, her termination based upon those absences

---

**6.** There is some precedent for the position that the FMLA would preclude a state common law claim. *See, e.g., Phelan v. Town of Derry*, 1998 WL 1285898 (D.N.H. Dec.9, 1998); *Gearhart v. Sears, Roebuck & Co.*, 27 F.Supp.2d 1263, 1278 (D.Kan.1998), *aff'd*, 194 F.3d 1320 (10th Cir.1999); *Vargo–Adams v. United States Postal Service*, 992 F.Supp. 939, 944 (N.D.Ohio 1998); *Hamros v. Bethany Homes and Methodist Hosp.*, 894 F.Supp. 1176, 1178–79 (N.D.Ill.1995). None of these decisions regarding the FMLA's preclusive effect on common law remedies involve removal based on the FMLA. Rather, they note that where a plaintiff has *pleaded* claims under both the FMLA and state common law, the state common law claims may be precluded. In other words, where a complaint has already been filed in federal court that alleges both state common law and a federal statutory scheme, the federal statute may preclude the common law remedy,

may be grounds for a lawsuit for wrongful termination because of a disability.[7]

Because of the vague assertions made by the plaintiff as to her third cause of action, it is impossible to determine her likelihood of success in a New York state court.[8] Nevertheless, it is possible for Sullivan to make out a tenable claim, depending on the facts surrounding her leaves of absence.[9] Additionally, it is worth noting that her likelihood of success with a FMLA claim would also be speculative because it is unclear from the complaint whether she would meet all of the requirements of such a claim.[10] As a result, the

court would have to infer facts in this case to establish either a federal or state claim. Given that removal jurisdiction is limited, the proper course is to allow plaintiff the benefit of the doubt in correctly alleging her causes of action. The mere fact that the defendant might believe that the plaintiff could be more successful arguing the case under the FMLA will not trump the plaintiff's choice of forum. In any event, the court rejects AIG's contention that the scant facts and allegations contained in the third cause of action would only form the basis of a FMLA claim and could not support any New York state claim.[11]

7. While such claims evidently are rarely, if ever, successful in New York, courts generally deny relief to the plaintiff not because such a cause of action would be impossible, but rather because the plaintiff often cannot meet the high standard for proving such a claim. In *Giaquinto v. New York Tel. Co.*, 135 A.D.2d 928, 522 N.Y.S.2d 329, 330 (3rd Dept.1987), the court found that the plaintiff was not fired because of her disability, *per se*, but because the number of days that she missed as a result of that disability were unacceptable in a job that required good attendance "to effectively provide . . . communication services 24 hours per day, 365 days per year." The court found that because of the nature of the job, the plaintiff's disability prevented her from being a "productive worker." *Id.* Plaintiff's position at AIG, however, may be such that she could perform "in a reasonable manner the activities involved in the job or occupation" despite a disability which required her to take leaves of absence. N.Y. Exec. Law § 292[21]. This is therefore a claim which New York courts seem to entertain, even if it is with skepticism. *See also, Matter of Silk v. Huck Installation and Equipment Division*, 109 A.D.2d 930, 486 N.Y.S.2d 406, 406–07 (3d Dept.1985) (denying plaintiff's claim of disability discrimination finding her "disability did prevent her from doing her job in a reasonable manner since it caused her to miss an unacceptably high number of days of work in a *job that required consistently good attendance*" (emphasis added)).

8. Of course, the defendant may move in New York state court for a bill of particulars, *see* N.Y. C.P.L.R. §§ 3041–3144, or for a more definite statement, *see* N.Y. C.P.L.R. § 3024(a), to clarify the vague third cause of action or even for a dismissal of the third cause of action, *see* N.Y. C.P.L.R. § 3211(a)7. In response, the plaintiff may move for leave

to amend her complaint. *See* N.Y. C.P.L.R. § 3025.

9. Furthermore, in both *Danfelt* and *Findlay* cited above, the plaintiffs did not bring their claims under specific state medical leave statutes, but rather under the general state common and statutory law regarding wrongful discharge. *Danfelt*, 998 F.Supp. at 607; *Findlay*, 1999 WL 1939246, at *1. A brief review of Maryland and North Carolina case law reveals that those jurisdictions apparently do not have any more of an established statutory or common law tradition than New York of allowing such suits. This gives further credence to the notion that a federal court should not attempt to predict the probable success of a claim in state court where a federal law which might provide greater support does not preempt a state cause of action.

10. To make out a claim under the FMLA, Sullivan would need to demonstrate, among other things, that she worked the requisite number of hours during the previous twelve month period, *see* 29 U.S.C. § 2611(2)(A)(ii), that AIG qualified as an employer covered by the Act, *see* 29 U.S.C. § 2611(4), and that her leaves of absence did not exceed the maximum allowable, *see* 29 U.S.C. § 2612(a)(1).

11. The court therefore distinguishes the case law upon which AIG relies, including *Kahn v. Salomon Brothers Inc.*, 813 F.Supp. 191 (E.D.N.Y.1993); *In re Wiring Device Antitrust Litig.*, 498 F.Supp. 79, 82 (E.D.N.Y.1980); *Vance v. W.G. Yates & Sons Constr. Co.*, 974 F.Supp. 879, 882 (N.D.Miss.1997). All of these cases involve situations where the court found there was no possible state law cause of action and in *Kahn* and *Wiring Device Antitrust Litigation*, the courts noted that the respective plaintiffs' complaints contained sufficient allegations to support federal claims.

Finally, the court turns to the plaintiff's request for the award, pursuant to 28 U.S.C. § 1447(c), of costs and fees incurred by the plaintiff in litigating the improper removal of her case to federal court. The award of costs and fees in such a matter is left to the discretion of the district court. *See* 28 U.S.C. § 1447(c) (stating that "[a]n order remanding the case *may* require payment of just costs and any actual expenses" (emphasis added)); *Morgan Guar. Trust v. Republic of Palau,* 971 F.2d 917, 924 (2d Cir.1992) (holding that § 1447(c) "affords a great deal of discretion and flexibility to the district courts in fashioning awards of costs and fees"). The court appreciates that removal under the artful pleading doctrine is a complicated and somewhat murky issue. AIG's position in this matter is colorable, even if in the end it is incorrect. As such, the court denies the plaintiff's motion for the award of costs and fees. *See Lewis v. Travelers Ins. Co.,* 749 F.Supp. 556, 558 (S.D.N.Y.1990) (Lasker, J.) (denying a motion for costs and fees pursuant to 28 U.S.C. § 1447(c) because the defendant's removal of the claim was not "frivolous" and was "plausibly supported by some existing case law").

## CONCLUSION

The court finds that the plaintiff has pleaded no federal claims and that New York state law may provide relief based upon the plaintiff's allegations. Furthermore, since the FMLA does not preempt state law and is not a necessary and central element of the plaintiff's state law claim, it cannot be the sole basis of removal. Therefore, the plaintiff's motion to remand this matter to New York state court is granted. The plaintiff's motion for the award of costs and fees is denied.

**IT IS SO ORDERED.**