**Deborah VARGO–ADAMS, Plaintiffs,**

v.

**UNITED STATES POSTAL SERVICE, Defendant.**

**No. 1:97–CV–114.**

United States District Court, N.D. Ohio, Eastern Division.

Jan. 9, 1998.

---

George R. Oryshkewych, Parma, OH, for Plaintiff.

Annette G. Butler, Office of U.S. Attorney, Cleveland, OH, for Defendants.

## MEMORANDUM OPINION AND ORDER

GWIN, District Judge.

On October 22, 1997, Defendant United States Postal Service moved this Court to dismiss or for summary judgment [Doc 16]. The Court denies summary judgment, but grants the motion to dismiss the two pendent state claims for the reasons that follow.

### I

Plaintiff Deborah Vargo–Adams brings this action against Defendant Postal Service pursuant to the Family and Medical Leave Act. She claims she was entitled to take intermittent leave pursuant to the Family and Medical Leave Act, 29 U.S.C. § 2617 ("FMLA"). She claims that Defendant wrongly discharged her from employment on May 17, 1995 for failure to maintain a regular work schedule. Adams alleges that said discharge violated the Family and Medical Leave Act, Ohio public policy on wrongful discharge, and was an intentional infliction of emotional distress.

Defendant Postal Service moves for dismissal and summary judgment. First, Defendant Postal Service says that Plaintiff Adams did not suffer from a "serious health condition" and cannot make claim under the Family and Medical Leave Act. Second, Defendant Postal Service says that even if Plaintiff is afforded protection by the Family and Medical Leave Act, she failed to comply with reporting requirements required by the Act. Third, Defendant Postal Service says that

Plaintiff Adams's claims for wrongful discharge (count II) and intentional infliction of emotional distress (count III) fail to state claims upon which relief can be granted. Finally, Defendant Postal Service says this Court does not have jurisdiction over Plaintiff Adams's claims for intentional infliction of emotional distress.

## II

In August 1986, Plaintiff Adams began employment with Defendant Postal Service. She was hired as a distribution clerk and remained in that position until her firing. From 1989, Plaintiff Adams had attendance problems in her employment. The Defendant Postal Service warned her about these absence problems. The Postal Service suspended her on more than one occasion.

On February 24, 1994, the Postal Service gave Adams a notice of removal because of her failure to maintain a regular work schedule. Adams filed a grievance from this 1994 removal. During negotiations over the grievance, Adams revealed to the Postal Service that she suffered from migraine headaches. After negotiations, she, her union and the Defendant Postal Service agreed upon a last chance settlement agreement.[1]

Consistent with the last chance settlement agreement, in May 1994, Plaintiff Adams gave the Postal Service a statement from a doctor.[2] Plaintiff Adams presents evidence that she invoked the protection of the Family and Medical Leave Act and requested intermittent leave because of her migraine headaches. She also gives evidence that the Postmaster where Plaintiff worked accepted Plaintiff's medical documentation as sufficient for Family and Medical Leave Act purposes.

In September 1994, Plaintiff Adams began to miss work again. From September 1994 to April 1995, Adams was absent without leave more than two days, was late seven times, and was absent nine days.

Plaintiff Adams suggests that she gave sufficient notice that these absences were caused by the migraine headache condition. In summary, Adams gives evidence that on at least seven occasions she submitted written notice that her absence resulted from the migraine condition.[3] She gives evidence that her supervisor rejected these submissions, claiming that they lacked documentation. After these seven rejections, Plaintiff Adams stopped making written submissions but claims she specifically stated that it was due to the headaches.[4]

On April 7, 1995, Defendant Postal Service gave Plaintiff Adams notice that it terminated her because of her attendance problems.

## III

The procedure for granting summary judgment is found in FED. R. CIV. P. 56(C), which provides in part that

[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

---

1. The last chance settlement agreement said, in pertinent part that:
   "1. [Adams] must provide acceptable medical documentation to the Postmaster indicating that she does suffer from debilitating migraine headaches, that she has enrolled in a treatment program, and the treating physician's recommendation as to fitness for duty....
   "2. [Adams] will be expected to maintain her assigned schedule and must make every effort to avoid unscheduled absences. In addition, [Adams] must provide acceptable evidence for absences when required.

2. The statement from her doctor indicated that Adams had suffered from migraines since 1973 and would continue to suffer for a lifetime, and that if left untreated, the condition would lead to serious illness.

3. Plaintiff Adams gives evidence that on June 14, 1994, July 19, 1994, July 22, 1994, July 25, 1994, August 4, 1994, August 16, 1994, August 22, 1994, September 16, 1994, and on September 29, 1994, Plaintiff filled out a Form 3971, Request for or Notification of Absence, that indicated "Family Med. Leave."

4. Defendant Postal Service gives conflicting evidence. The Defendant suggests that Adams' call in leave requests did not explain the circumstances and that she failed to supply requested information. Defendant Postal Service also says Adams would alter written submissions to show that the absence was protected by the Family and Medical Leave Act.

any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment is not proper if there is a material dispute over the facts, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). See also *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

On a motion for summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Agristor Financial Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir.1992)) (the court must draw all inferences in a light most favorable to the nonmoving party).

## IV

■ Defendant Postal Service seeks summary judgment on Plaintiff's first claim on the ground that Adams' migraine headaches were not a serious medical condition qualifying her for the protection of the Family and Medical Leave Act. Under the Family and Medical Leave Act, a serious health condition is described:

(11) Serious health condition

The term "serious health condition" means an illness, injury, impairment, or physical or mental condition that involves—

(A) inpatient care in a hospital, hospice, or residential medical care facility; or

(B) continuing treatment by a health care provider.

29 U.S.C. § 2611(11).

A "serious health condition" is defined in the Code of Federal Regulations § 825.114(a)(2)(iii) as:

(iii) Any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:

(A) Requires periodic visits for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;

(B) Continues over an extended period of time (including recurring episodes of a single underlying condition); and

(C) May cause episodic rather than a continuing period of incapacity (e.g.asthma, diabetes, epilepsy, etc.).

In *Rhoads v. F.D.I.C.*, 956 F.Supp. 1239 (D.Md.1997), the Court found that migraine headaches could qualify as a "serious health condition:"

The federal regulations governing the FMLA as to what constitutes a "serious health condition," make it clear that health conditions characterized under "continuing treatment by a health care provider," could very well include both asthma and migraines, as both conditions are specifically mentioned in these regulations ... The final regulations clarify: "A chronic serious health condition is one which: ...[m]ay cause episodic rather than a continuing period of incapacity (e.g.asthma, diabetes, epilepsy, etc.)." 29 C.F.R. § 825.114(a)(2)(iii). Those final regulations go on specifically to exclude migraines from a laundry list of ailments too insignificant for FMLA coverage. 29 C.F.R. § 825.114(c). Additionally, the final regulations state:

Absences attributable to incapacity under paragraphs (a)(2)(ii) or (iii) qualify for FMLA leave even though the employee ... does not receive treatment from a health care provider during the absence.... Thus, both the above regula-

tions and the developing case law on this subject suggest that both asthma and migraines may qualify as a serious health condition under the FMLA.[5]

Defendant Postal Service gives evidence which, if believed, would support a finding that Plaintiff Adams did not suffer from a "serious health condition." Defendant Postal Service points to the limited medical treatment received by Plaintiff Adams.[6] The Postal Service contends that Adams' absences from work rarely occurred on three consecutive calendar days. Defendant Postal Service argues that because incapacity was sporadic and rarely occurred on any three consecutive days, it does not suggest a need for continuing treatment.

Because of limitations on medical treatment and because incapacity did not last more than three days, Defendant Postal Service says Plaintiff Adams cannot claim that her illness is a serious health condition that is covered by the Family and Medical Leave Act. *See Bauer v. Varity Dayton–Walther Corp.*, 118 F.3d 1109 (6th Cir.1997) (employee who suffered from intermittent episodes of hematochezia, or passage of bloody stools, did not have "serious health condition," as required to trigger right to leave under FMLA; the employee never sought or received inpatient care, his condition did not cause him to be absent from his position for more than three calendar days, and the employee did not miss any work due to illness with a subsequent employer, or seek medical treatment after discharge).

Plaintiff Adams gives evidence that contests the conclusions suggested by Defendant Postal Service. Adams shows having made six visits to a health care provider for treatment of migraines, including treatment sought in February 1993, some 15 months before the "last chance settlement agreement."

The Court finds sufficient evidence that a reasonable jury could find Adams suffers a "serious health condition."

■ The Defendant Postal Service also says that Adams also failed to qualify her absences according to the requirements of the Family and Medical Leave Act and the Employee Leave Manual. The Postal Service says Adams needed to notify her supervisors of the reasons for her leave at the time that the leave was requested or risk being denied the leave. 29 C.F.R. § 825.303(b); 29 C.F.R. § 825.208(a)(1).

But here, there are material factual issues in dispute. The defendant admits Adams called her supervisor to advise that she would not report for work. Still, Defendant Postal Service says that she never requested Family and Medical Leave Act rights or say that she was absent due to migraines.

But Adams gives different testimony. She testifies that she completed written notification until she reasonably believed that it would never be accepted. She testifies that thereafter she always specifically stated that it was due to the headaches. Adams says this was adequate notice that her absences were Family and Medical Leave Act-qualifying. Finally, Adams says that the Defendant Postal Service had a duty to clarify any doubts.[7]

---

5. The *Rhoads* Court cited to *McClain v. Southwest Steel, Co. ., Inc.*, 940 F.Supp. 295, 298–300 (N.D.Okl.1996) (summary judgment not appropriate where plaintiff contended absenteeism was the result of chronic nausea, diarrhea, severe headaches and other similar health problems); and *Hendry v. GTE North, Inc.*, 896 F.Supp. 816, 827–28 (N.D.Ind.1995) (summary judgment not appropriate where plaintiff's headaches created a genuine issue of fact as to whether plaintiff had a serious health condition which rendered her unable to perform the functions of her job).

6. Adams gave testimony that from 1988 to 1994, her medical treatment was limited to a few visits to the doctors' offices. She also testified that she is not currently on medication or receiving any treatment from a doctor for her headaches.

7. Adams cites to *Rhoads, supra,* at 1257 ("In any circumstance where the employer does not have sufficient information about the reason for an employee's use of paid leave, the employer should inquire further to ascertain whether the paid leave is potentially FMLA-qualifying."). *See also, Brannon v. OshKosh B'Gosh, Inc.*, 897 F.Supp. 1028, 1038 (M.D.Tenn.1995) ("employer's duty to make further inquiry to determine if the leave qualified for FMLA protection"); *Hendry, supra,* at 828 ("employer had a responsibility to inquire further of Hendry about whether FMLA leave was being sought and to obtain the necessary details of the leave to be taken").

Given this history, the Court finds that a reasonable jury could find that Plaintiff Adams gave adequate notice to Defendant Postal Service to qualify her absences according to the requirements of the Family and Medical Leave Act.

For these reasons, the Court finds material issues of fact as to count I of Plaintiff Adams's complaint. The Court denies Defendant Postal Service's motion for summary judgment as to count I of the complaint.

## V

■ Defendant Postal Service seeks dismissal of plaintiff's claim for wrongful discharge. The defendant says this claim is preempted by the statutory remedy given by the Family and Medical Leave Act. Plaintiff Adams does not contend otherwise.

In count II of the complaint, the plaintiff asserts a claim for "wrongful discharge as against public policy under Ohio law." In *Gall v. Quaker City Castings*, 874 F.Supp. 161, 164 (N.D.Oh.1995), the Court spoke to this:

Congress has obviously spoken on the issue of ... family medical leave in the workplace by enacting comprehensive statutes as legislative statements of public policy in this area. As the *Painter* Court noted, "Judicial policy preferences may not be used to override valid legislative enactments, for the [legislature] should be the final arbiter of public policy." Because the legislature has enunciated public policy and provided remedial schemes to protect employees in this area, this Court will not override the scheme ... [8]

The Court finds that Plaintiff's claim for wrongful discharge must be dismissed for failure to state a claim on which relief may be granted.

## VI

Defendant Postal Service seeks dismissal of count III of Plaintiff's Complaint where she claims intentional infliction of emotional distress against the Postal Service and Postal Service employees Jewelle Hoye and Charlene Payne. The defendant says Plaintiff Adams fails to state a cause of action for intentional infliction of emotional distress. Alternatively, Defendant says this Court does not have jurisdiction to entertain such claims. Plaintiff Adams does not oppose the motion to dismiss count III of the Complaint.

■ The Federal Employee's Compensation Act establishes a program of workers' compensation for federal employees who are injured in the performance of their duties. 5 U.S.C. § 8102(a). Once it is determined that an injury is within the scope of coverage of the Federal Employee's Compensation Act, its remedy is exclusive and the employee may not bring any other claims for compensation against the government. *Lockheed Aircraft Corp. v. U.S.*, 460 U.S. 190, 194, 103 S.Ct. 1033, 74 L.Ed.2d 911 (1983).

The Secretary of Labor administers and decides all questions arising under the Federal Employee's Compensation Act, including those concerning the scope of coverage. The Secretary's decision on whether the Federal Employee's Compensation Act covers the alleged injury is final and is not reviewable by the courts.

Here, Plaintiff Adams's claims for intentional infliction of emotional distress are within the Federal Employee's Compensation Act. She cannot bring a claim for intentional infliction of emotional distress. *Castro v. U.S.*, 757 F.Supp. 1149, 1151 (W.D.Wash. 1991) (because the Federal Employee's Compensation Act covers emotional injuries, claim for intentional infliction of emotional distress under FTCA is barred).

■ Even if this Court had jurisdiction, Plaintiff Adams fails to state a claim for intentional infliction of emotional distress. The Ohio Supreme Court adopted Section 46 of the Restatement of the Law 2d, Torts (1965), in recognizing a claim for intentional infliction of emotional distress, in *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 453 N.E.2d 666 (1983). The Court described the tort as follows:

---

**8.** *See also, Wyckoff v. Forest City Auto Parts*, 916 F.Supp. 683 (N.D.Ohio 1996) (dismissing common law public policy tort claim where statutory discrimination statutes provide avenues for relief).

One who by *extreme and outrageous conduct* intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm. *Id.* (syllabus of decision) (emphasis added).

The *Yeager* Court cited a comment to the Restatement which noted that "outrageous" and "extreme" confined liability to conduct going "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 375, 453 N.E.2d 666.

The Court does not find that standard met in this case. Plaintiff Adams pleads no facts that would support a claim of intentional infliction of emotional distress. Because this Court does not have jurisdiction and because Plaintiff Adams fails to plead a cause of action for intentional infliction of emotional distress, this Court grants Defendant Postal Service's motion to dismiss count III.

## VII

The Court grants Defendant's motion to dismiss Plaintiff's claims for wrongful discharge and intentional infliction of emotional distress, but denies Defendant's motion for summary judgment on Plaintiff's claim under the Family and Medical Leave Act.

IT IS SO ORDERED.