**Heidi H. NORMAN, Plaintiff,**

v.

**SOUTHERN GUARANTY INSURANCE COMPANY, Defendant.**

**No. CIV.A. 00–T–1565–N.**

United States District Court,
M.D. Alabama,
Northern Division.

March 14, 2002.

M. Wayne Sabel, Mark W. Sabel, Jr., Ragini Gupta, Sabel & Sabel, P.C., Montgomery, AL, for Plaintiff.

Richard A. Ball, Jr., Allison L. Alford, Ball, Ball, Matthews & Novak, P.A., Montgomery, AL, for Defendant.

## ORDER

MYRON H. THOMPSON, District Judge.

Plaintiff Heidi Norman brings this action against her former employer, defendant Southern Guaranty Insurance Company, alleging claims under the Family

Medical Leave Act, 29 U.S.C.A. §§ 2601–2654 (FMLA), Americans with Disabilities Act,. 42 U.S.C.A. §§ 12112–12117(ADA), Fair Labor Standards Act, 29 U.S.C.A. § 215(a)(3) (FLSA), and state-law claims for negligent supervision and training, negligent retention, and negligence. Jurisdiction is properly exercised on the basis of 28 U.S.C.A. § 1331 (federal question), 28 U.S.C.A. § 1343 (civil rights), 42 U.S.C.A. §§ 2000e–5(f)(3) and 12117(ADA), 29 U.S.C.A. § 216(b) (FLSA), 29 U.S.C.A. § 2617(a)(2) (FMLA), and, for the pendent state-law claims, 28 U.S.C.A. § 1367 (supplemental jurisdiction).[1] Norman's motion to strike and Southern Guaranty's motion for summary judgment are currently before the court. For the reasons below, the strike motion is denied and summary-judgment motion is granted in part and denied in part.

## I. SUMMARY–JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion, and the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing burden-shifting under Rule 56). The non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of the pleadings. Fed.R.Civ.P. 56(e).

The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in her favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II. FACTUAL SUMMARY

Norman suffers from major depression, anxiety attacks, and a personality disorder, which are controlled by medication. Sometimes, the medication does not work properly, causing her to experience lack of concentration, nervousness, dizziness, nausea, headaches, lack of energy, and other symptoms.

She worked at Southern Guaranty for 14 years, since 1986, most recently as a Rates and Regulatory Trainee. She continuously received good reviews and performance-based pay raises and promotions. However, she missed many days of work, partly

1. Norman cites the Federal Declaratory Judgment Act, 28 U.S.C.A. §§ 2112–2113, as an alternative basis for jurisdiction. However, the Declaratory Judgment Act does not independently extend the jurisdiction of the federal courts. *GNB Battery Technologies, Inc. v. Gould, Inc.,* 65 F.3d 615, 619 (7th Cir.1995). Rather, jurisdiction exists for a declaratory-judgment action if such jurisdiction would have otherwise existed in a coercive action brought by the defendant. *Franchise Tax Bd. of the State of Cal. v. Construction Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). The alternative bases of jurisdiction in this case provide the support necessary to hear Norman's declaratory-judgment request.

because of her depression and problems with the medication used to control her depression. For example, in March 1999, Norman began to experience significant problems with her medication that required her to miss several weeks of work. Norman also missed many isolated days of work—after arriving at work, she began to experience some of the above symptoms and found herself unable to complete the day. For the period of November 1998 to November 1999, Norman took approximately 48 sick days (38 full and 10 partial), 45 additional days designated as FMLA leave (44 full and one partial), several days of annual leave, and the major holidays.

Southern Guaranty offers a wide range of leave time for various reasons, including ample time for sick leave. Excluding time taken as annual leave, the policy manual states that "6–8 occurrences" in a 365–day period is "acceptable" absenteeism.[2] An "occurrence" is defined in the manual as "either a one-day absence (or partial day absence) or consecutive absences related to a specific reason."[3] An "occurrence" does not accrue if the employee uses annual leave instead of sick leave or if the absence qualifies under the FMLA.[4]

Norman's supervisors knew of her struggle with depression and the adverse effects that her medication regime sometimes had on her. Two of her supervisors during the relevant period, Buddy Griffith and Lorine Norris, discussed with her the reasons for her absences before her transfers to their department. Griffith even said that he understood Norman's problems because his daughter used some of the same medications. Before August 1999, only Griffith and Norris were aware

of Norman's depression, and they granted her a flexible schedule in response to it.

In June 1999, Norris informed Norman that she already had eight occurrences of sick leave and that any more instances would reflect poorly on her performance review. Norris suggested that Norman use her annual leave for any future absences. Norman agreed and used her annual leave for several absences after that date.

In August 1999, Norman's doctor prescribed a medical leave of absence in order to re-work her medication regimen completely; this absence was treated by Southern Guaranty as a FMLA absence. According to Norman, it was at this time that Payne and other upper management of Southern Guaranty learned of her illness and her instances of absenteeism. On the day Norman returned to work in October 1999, she was presented with a memorandum that formally warned her concerning excessive absenteeism. Following this warning, Norman was absent on October 25–29, as a result of bronchitis or a sinus infection; this absence prompted Southern Guaranty to put Norman on probation, the next step in its progressive disciplinary structure. On November 19, 1999, Norman was again absent from work due to an upper respiratory infection, and Southern Guaranty terminated her employment.

## III. DISCUSSION

### A. "Motion to Strike"

■ At the outset, the court addresses Norman's purported "motion to strike"

---

**2.** Southern Guaranty Policy Manual, Plaintiff's Exhibit 1, at 9–2.

**3.** *Id.*

**4.** There is some dispute as to whether the practice of substituting annual leave for sick

leave is condoned by the upper management of Southern Guaranty. While Norman's immediate supervisor allowed Norman to substitute leave, it was retroactively revoked as to Norman upon her return from her medical leave of absence.

the affidavits of Carlene Payne and Chris Gates. Norman raises this "motion" in the opening pages of her brief in opposition to summary judgment, and it will be denied for the following reasons. First, the proper procedural avenue to assert a motion to strike is through a separate court filing, not in the midst of a summary-judgment brief. Second, the affidavits of Payne and Gates do not provide a legal predicate for a motion to strike. *See, e.g., Morgan v. Sears, Roebuck & Co.,* 700 F.Supp. 1574, 1576 (N.D.Ga.1988). Indeed, a motion to strike under Federal Rule of Civil Procedure 12(f) applies only to material in *pleadings,* not affidavits. *Lowery v. Hoffman,* 188 F.R.D. 651, 653 (M.D.Ala.1999). The only requirement for affidavits submitted in support of summary judgment is that they "be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. Pro. 54(e). Norman does not contest the affidavits' satisfaction of these prerequisites. Therefore, in the process of resolving the pending summary judgment motion, the court will implicitly consider her "motion to strike" as, instead, a notice of objection to the testimony described. *Anderson v. Radisson Hotel Corp.,* 834 F.Supp. 1364, 1368 n. 1 (S.D.Ga.1993).

The summary-judgment standard may force the court to "disregard" controverted evidence presented by the moving party. However, this sifting of evidence is accomplished by the court without resort to an exclusionary process, lest the summary-judgment stage degenerate into a battle of motions to strike following the movant's attempt to show flaws in the opposing party's version of events.

### B. FMLA Claims

Norman contends that Southern Guaranty interfered with, and eventually terminated her for asserting, her substantive rights under the FMLA. The FMLA and the regulations promulgated to enforce it provide "for two types of broad protections to employees. The first protections ... confer new and affirmative entitlements and thus are essentially *prescriptive*." *Peters v. Community Action Committee, Inc.* 977 F.Supp. 1428, 1432 (M.D.Ala.1997). For example, "[s]ubsection (a)(1) of § 2612 provides, in part, that 'an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12–month period.'" *Id.* "The second FMLA protections ... bar certain discriminatory conduct and thus are essentially *proscriptive*." *Id.* Thus, for example, "[a]n employer is prohibited from discriminating against employees or prospective employees who have used FMLA leave." 29 C.F.R. § 825.220(c).

### 1. Prescriptive Claim

■ To prevail on a prescriptive claim at trial, the employee must show, by a preponderance of the evidence, that she was entitled to the denied benefit under the FMLA. *O'Connor v. PCA Family Health Plan, Inc.,* 200 F.3d 1349, 1353–54 (11th Cir.2000). Norman must show that she was "entitled to but denied the [FMLA] right." *Strickland,* 239 F.3d at 1208. Norman argues that her FMLA rights were interfered with by (1) the substantive denial of time off to deal with her medical problems and (2) interference with her FMLA rights in the form of reinterpreted absentee policies, sudden absenteeism warnings, and eventual termination for taking time off for medical problems.

In analyzing this set of issues, first a determination must be made as to whether Norman's condition entitles her to FMLA protection, that is, whether she has a substantive health problem leading to coverage and whether she complied with any applicable procedural precursors to coverage. Once the question of any FMLA

coverage has been determined, the scope of that coverage must be examined.

### a. Abstract Coverage by FMLA

The FMLA grants eligible employees the right to take "12 workweeks of leave during any 12–month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C.A. § 2612(a)(1). Following this period of leave, the employee has the right to be "restored by the employer to the position of employment held by the employee [or a comparable position] when the leave commenced." *Id.* § 2614(a)(1). The leave may be taken as a block or, when medically necessary, intermittently. *Id.* § 2612(b)(1).

■ It is undisputed that Norman was an "eligible employee," that is, she had been employed by Southern Guaranty for more than a year and worked at least 1,250 hours during the past year. 29 U.S.C.A. § 2611(2)(A); *id.* § 825.110(d). For many of her absences, Norman has produced sufficient evidence to create an issue of fact as to whether she suffered from a "serious health condition" that prevented her from performing her job such that FMLA leave was appropriate.

A "serious health condition" is defined under the FMLA as "an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C.A. § 2611(11). "Continuing treatment" may involve

"[a] period of incapacity (*i.e.,* inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves . . . (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider."

*Id.* § 825.114(a)(2). A regimen of continuing treatment includes, for example, a course of prescription medication. *Id.* § 825.114(b). "Continuing treatment" may also refer to

"any period of incapacity or treatment for such incapacity due to a *chronic serious health condition.* A chronic serious health condition is one which:

(A) Requires periodic visits for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;

(B) Continues over an extended period of time (including recurring episodes of a single underlying condition); and

(C) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.)."

*Id.* § 825.114(a)(iii) (emphasis added).

Depression is recognized as a *potentially* serious health condition under the FMLA. *See, e.g., Cooper v. Olin Corp., Winchester Div.,* 246 F.3d 1083, 1090 (8th Cir.2001). Norman's depression, as supported in the record, could embody a "chronic serious health condition" such that all her absences due to the condition should qualify for FMLA leave. A reasonable jury could also find that Norman's regular bouts with upper respiratory infection should also be considered a "serious health condition" within the meaning of the FMLA.

The "serious health condition" must additionally result in the employee's inability "to perform the functions of the position." 29 U.S.C.A. § 2612(a)(1). Norman has met this burden by presenting evidence of

her extreme difficulty or impossibility in performing her job when the symptoms resulting from her conditions became pronounced.

■■■ When the need for FMLA leave is foreseeable, the employee should give her employer "not less than 30 days' notice." 29 U.S.C.A. § 2612(e)(2). When unforeseeable, the 30–day notice requirement does not apply, and the employee must only give her employer such notice as is practicable. *Id.* § 825.303(a); *Gay v. Gilman Paper Co.,* 125 F.3d 1432, 1436 (11th Cir.1997). The employee is *not* required to specifically invoke the protections of the FMLA or even mention the FMLA; the employer bears the burden of determining whether the requested absence actually meets the statutory requirements.[5] 29 C.F.R. § 825.303(b); *Strickland,* 239 F.3d at 1208. However, if the employee gives no reason for her absence, but merely walks off the job, the employer is not charged for failing to give FMLA leave when it might otherwise be appropriate. *Strickland,* 239 F.3d at 1207.

The employer *may* require that the employee present a certification from a medical health professional confirming her serious health condition and her inability to return to work. 29 U.S.C.A. § 2614(c)(3)(A). However, the employee's failure to provide such a certification in the absence of such a request should not be prejudicial to her claims.

Norman has presented a question of fact as to the notice given her employer concerning her illnesses. Preliminary, she has presented evidence that her supervisors, throughout the relevant time period, knew of her depression and the medically necessary steps employed to treat her depression, including the use of medication that sometimes affected her ability to work. She also presented her employer with adequate notice for the absences to qualify for treatment under the FMLA. Norman's illness and medication sporadically caused her to suffer symptoms that rendered her unable to continue working. At these moments, she informed her supervisor that she had to go home. This notice, in the context of an environment infused with knowledge of her depression and despite her failure to specifically mention the provisions of the FMLA, made it incumbent on Southern Guaranty to pursue any needed corroborating evidence from Norman concerning her eligibility for FMLA leave.

### b. Scope of Coverage

Norman argues that her FMLA rights were interfered with by (1) the substantive denial of time off to deal with her medical problems and (2) interference with her FMLA rights in the form of reinterpreted absentee policies, sudden absenteeism warnings, and eventual termination for taking time off for medical problems.

■■■ Clearly, Norman received the amount of leave that she was entitled to under the FMLA. From the period of November 1998 to November 1999, Norman took 128 days of total leave, including 82 full and 11 partial days designated as sick leave or FMLA days, 16 annual leave days, a personal day, five unpaid leave days, and 13 company holidays. As noted before, the FMLA guarantees only 12 weeks (60 days) of medical leave. The failure of an employer to designate leave time as FMLA leave does not grant the employee additional time beyond the 12 weeks guaranteed by the statute. *McGregor v. Autozone, Inc.,* 180 F.3d 1305, 1307–08 (11th

---

**5.** Therefore, Norman's awareness or lack of awareness of her FMLA rights is irrelevant. Southern Guaranty's motive in denying her FMLA leave is likewise irrelevant; an interference claim exists if Norman was entitled to FMLA leave and did not receive it.

Cir.1999). Therefore, if the court is to believe Norman's contention that most, if not all, of her absences should have been counted as FMLA time, the court must find that Southern Guaranty fully complied with, and, indeed, exceeded the 12–week requirement of the FMLA. Norman received at least 82 full (not to mention 11 partial) days of leave for medical reasons in the relevant year.

■■■ In support of her second FMLA-interference claim, Norman argues that her rights under the FMLA include not only the right to 12 weeks or 60 days of medical leave, but also the right to have the 60 days designated in a certain way.[6] As stated, Norman took 82 full leave days for medical reasons.[7] If only the days taken at the end of the applicable 12–month period (November 1998 to November 1999) are designated as FMLA days, the remaining days at the beginning of the period could be grouped in such a manner as to constitute more than six "occurrences," which would mean that Norman would have violated Southern Guaranty's absenteeism policy. However, if only the days taken at the beginning of the applicable period are designated as FMLA days, the remaining days at the end could not necessarily be grouped in such a manner as to constitute more than six "occurrences." Norman's claim in this regard seems to revolve around the application of Southern Guaranty's absenteeism policy to her situation. According to Norman, the way in which Southern Guaranty designated her leave time as FMLA-qualifying (that is, designating only the days taken at the end of the applicable 12–month period as FMLA) resulted in the company being able to apply its internal absenteeism policy in such a way as to terminate her. If

Southern Guaranty, Norman continues, had designated her FMLA-qualifying leave in a different way, that is, to only the days taken at the beginning of the applicable period, she would not be in violation of the company absenteeism policy.

Norman bases her arguments on 29 C.F.R. § 825.220(c), which states that "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions," and 29 C.F.R. § 825.220(b), which states that "any violations of the Act or these regulations constitute interfering with, restraining, or denying the exercise of rights provided by the Act," and " 'interfering with' … would include manipulation by a covered employer to avoid responsibilities under the FMLA."

The question is whether the FMLA gives an employee a substantive right to require the employer to designate sick leave in such a way that the employee would not be in violation of the employer's absenteism policy. The court does not think so. There is simply nothing in the FMLA or its enforcement regulations that affirmatively requires that an employer always designate FMLA leave in such a manner that the employee would not be in violation of the employer's leave policy. Absent such, this court is without authority to create such an obligation.

That is not to say that an employer who has *intentionally* applied its company policies in such a way as to interfere with or retaliate against an employee for exercising her rights under the FMLA is without fault or liability. The regulations cited by Southern Guaranty say as much. 29 C.F.R. § 825.220(c) ("employers cannot

---

6. Norman's argument on this claim has shifted over time and is not clear even now. The court has therefore distilled, as best it could, what it understands her argument to be.

7. The court has used only the "full" leave days (as opposed to "partial" ones) so as to give Norman the benefit of any the doubt in the application of the FMLA.

use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions"); *id.* § 825.220(b) (" 'interfering with' . . . would include manipulation by a covered employee to avoid responsibilities under the FMLA"). But the language of these regulations ("use . . . FMLA as a negative factor" and "manipulation . . . to avoid") contemplates some element of intent by the employer to frustrate or avoid FMLA responsibilities. Thus, to the extent that Norman claims that Southern Guaranty has intentionally designated, that is, manipulated, her FMLA leave in such a way that she would be in violation of the company's absentee policy, her claim will be considered as a proscriptive one, which is discussed next.

## 2. Proscriptive Claim

In deciding the summary-judgment motion on an FMLA proscriptive claim charging either discrimination or retaliation or both, the court is guided by the burden-shifting framework developed in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). *Brungart v. Bell-South Telecomm., Inc.,* 231 F.3d 791, 798 (11th Cir.2000). Under the *McDonnell Douglas* analysis, when the plaintiff charges retaliation, as Norman does here, the plaintiff bears the initial burden of proving a *prima facie* case, which is established by showing "(1) [s]he availed [her-]self of a protected right under the FMLA; (2)[s]he suffered an adverse employment decision; (3) there is a causal connection between the protected activity and the adverse employment decision." *Parris v. Miami Herald Publishing Co.,* 216 F.3d 1298, 1301 (11th Cir.2000).

After establishing the *prima facie* case, the burden shifts to the employer to present a legitimate non-retaliatory motive for the adverse employment decision. Once the employer presents such a motive, the burden shifts back to the employee to show that there is a genuine issue of material fact as to whether the proffered reason is pretextual; if the employee does so, she has met her burden at summary judgment.

### a. *Prima Facie* Case

Norman has presented evidence that she was engaged in statutorily protected conduct—specifically, that she took FMLA-charged leave, as discussed above. Her termination from the job at Southern Guaranty is certainly enough to satisfy her burden of showing an adverse employment decision.

Norman has also shown a sufficient causal link between the FMLA leave issue and her termination. To survive summary judgment, the employee must show only that "the protected activity and the adverse action were not wholly unrelated." *Clover v. Total Sys. Servs., Inc.,* 176 F.3d 1346, 1354 (11th Cir.1999) (quoting *Simmons v. Camden County Bd. of Educ.,* 757 F.2d 1187, 1189 (11th Cir. 1985)). This burden of causation may be met by showing that the employer gained knowledge of the employee's protected conduct at a point temporally proximate to the adverse action. *Clark County School District v. Breeden,* 532 U.S. 268, 273, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001). In addition, close temporal proximity between the protected conduct and the adverse-employment action can be sufficient circumstantial evidence of causation to allow the retaliation claim to proceed to the jury, unless there is undisputed proof that the employer had no knowledge of the protected activity at the time the decision was made. *Brungart,* 231 F.3d at 799.

Norman can easily meet this standard: on her first day of work after her FMLA medical leave of absence, she was presented with a memorandum warning her of excessive absenteeism. This close temporal proximity, coupled with the undisputed

knowledge of some members of the supervisory staff of Southern Guaranty of Norman's bouts with depression, creates a jury-triable issue as to the FMLA claim.

b. Employer's Non–Retaliatory Reason

■ Southern Guaranty asserts Norman's excessive absences as the non-retaliatory and non-discriminatory reason for which she was terminated. It counts 18 "occurrences" of absence during a one-year period, in excess of the policy manual's six-to-eight-occurrence guideline range. This showing meets Southern Guaranty's burden at this stage and shifts the burden back to Norman to show that this proffered reason is a pretext for retaliation.

c. Employee's Showing of Pretext

Norman counters this non-discriminatory and non-retaliatory reason by showing, through various administrative inconsistencies, that the absentee policy was not applied on a uniform basis and, indeed, was manipulated in order to give Southern Guaranty a facially valid reason for which to fire her because of her assertion of rights under the FMLA.

Southern Guaranty's leave policy stated that six-to-eight "occurrences" of absence in a 12–month period was acceptable. Every supervisor interpreted the term "occurrence" differently. The manual defines an "occurrence" as "either a one-day absence ... or consecutive absences related to a specific reason." Charlene Payne, vice-president of human resources, believes that a physical therapy schedule of several sessions during a month, would qualify as *one* occurrence, notwithstanding the language that seems to require "consecutive" absences (in the sense of one absence after the other without any intervening work days) for treatment as one occurrence.

As noted above, in June 1999, Norman's immediate supervisor informed her that she "already had eight occurrences" under the policy. Southern Guaranty now asserts that Norman actually had 15 occurrences at that point, with two more before leaving on her FMLA leave of absence. Norman contends that had all her absences at the beginning of the applicable year been treated as FMLA-protected, she would not have had more than six occurrences upon her return from leave, making the absenteeism warnings and eventual termination contrary to the policies of her employer.

It is certainly not clear, gauging this substantial flexibility of application, that Norman actually violated the letter of the absentee policy, especially considering that her absences could have been designated as FMLA leave in such as manner that the remaining absences would not have been enough to violate the company's policy. Moreover, the *post hoc* definition of occurrences, countermanding any such count performed by a preceding supervisor, is absolutely fraught with the possibility of retaliatory or discriminatory inference. Upon its own review of the 18 occurrences claimed by Southern Guaranty, the court finds several instances where consecutive absences (*i.e.*, Thursday, Friday, and the following Monday; consecutive workdays) are treated as multiple occurrences rather than one consecutive occurrence under the language of the policy. In addition, her relatively good performance reviews to that point and her near-immediate probation after returning to work from the FMLA medical leave of absence suggest that this flexible application to the detriment of Norman was a pretext for retaliating against her for asserting her FMLA rights.

Finally, Norman was allowed, before she took her FMLA-designated leave, to substitute annual leave days for sick leave in order to avoid obtaining more "occur-

rences" of absenteeism under the policy. However, after her return from her medical leave of absence, this practice was retroactively revoked. This change in the rules also points toward a retaliatory intent behind Southern Guaranty's actions against her.

Therefore, Norman's FMLA proscriptive claim should proceed to a jury. Southern Guaranty's motion for summary judgment will be denied to this extent.

## C.   FLSA Claim

Norman asserts a cause of action based on a willful violation of the FLSA. However, no evidence has been presented of a violation of the provisions of the FLSA. Indeed, Norman's brief in opposition to summary judgment does not address her FLSA claim. Based on the representation of Norman's counsel that this claim will not be pursued, summary judgment will be entered on her FLSA claim.

## D.   ADA Claims

The ADA prohibits an employer from discriminating against an employee who is a "qualified individual with a disability" based on the employee's disability with regard to the "terms, conditions, and privileges of employment." 42 U.S.C.A. § 12112(a). The provisions of the ADA apply to all employers who are "engaged in an industry affecting commerce" and employ "15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year." *Id.* § 12111(5)(A). Norman alleges that Southern Guaranty both discriminated and retaliated against her in violation of the ADA.

### 1.   Disability Discrimination

■ To state a case of disability discrimination, a plaintiff must show "(1) that she has a disability; (2) that, with or without reasonable accommodations, she can perform the essential functions of the position she holds; and (3) that she was dis-

criminated against because of her disability." *Terrell v. USAir,* 132 F.3d 621, 624 (11th Cir.1998).

### a.   Disability

A "disability" under the ADA is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C.A. § 12102(2).

■ Norman contends that her severe depression and resulting side effects from her medication qualifies as a disability under the Act. Depression, in some circumstances, can be an ADA "disability." *Pritchard v. Southern Co. Services,* 92 F.3d 1130, 1134 (11th Cir.1996). There is no question that Norman suffers from relatively serious and occasionally debilitating medical conditions. The question is whether these conditions "substantially limit" a "major life activity."

Major life activities are "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working," 29 C.F.R. § 1630.2(i). They are the activities that are "of central importance to daily life, that, for most people, require little or no difficulty to perform." *Id.* app. To determine whether these activities are "substantially limited," the regulations recommend that the nature and severity of the impairment, the duration or expected duration of the impairment, and the permanent or long-term impact of the impairment be considered. 29 C.F.R. § 1630.2(j).

Norman alleges that her depression and related ailments substantially limit her in the major life activities of sleeping, driving, traveling, thinking, and working—reporting that her condition causes an inability to concentrate, think straight, or sit still, as well as anxiety, nausea, headaches,

and heart palpitations. Based on the evidence submitted that confirms these symptoms, Norman has presented a genuine issue of material fact as to a substantial limitation of several major life activities.

### b. Ability to Perform Job's Essential Functions

■ A claimant under the ADA must also be able to show that, with or without reasonable accommodation, she could perform the essential functions of her job. There is a question of fact as to the nature of Norman's position at Southern Guaranty, such that this issue should proceed to the jury.[8] Preliminary, Norman's employment with Southern Guaranty for 14 years weighs against any finding that she was unable to perform the essential functions of *any* job at Southern Guaranty without reasonable accommodation. She seems to have performed her job adequately before her FMLA-approved leave of absence, with some flexibility from her supervisors regarding her absences.

Southern Guaranty contends that Norman's requested accommodation, unlimited time off for medical reasons, disrupts the work environment and fails to advance the duties of her position. Essentially, Southern Guaranty argues that Norman's requested accommodation is unreasonable. According to Southern Guaranty, as a Rates and Regulatory Trainee, Norman is responsible for the time-sensitive task of entering new insurance rate filings, which ensured that the raters in the Commercial Department used correct, up-to-date information in writing policies. This information must be in the computer system 45 days before its effective date. Norman contends that these duties were not her primary responsibility and that she entered the rates only when the person primarily responsible was too busy to do so. According to Norman, her position involved no time-sensitive duties, and her absences created no hardship for the department.

### c. Discrimination Because of Disability

■ In August 1999, corresponding with Norman's FMLA leave of absence, upper management at Southern Guaranty allegedly learned of Norman's depression and her excessive absenteeism. Upon her return, she was presented with a new, stricter policy of attendance that effectively revoked any accommodation given to her by her immediate supervisors. Shortly after this policy was instituted, she was terminated for excessive absenteeism. This temporal proximity weighs toward finding that her termination was an instance, at least in part, of discrimination against Norman for her disability. Therefore, this claim should proceed to the jury, and the motion for summary judgment should be denied.

### 2. Disability Retaliation

■ The ADA also prohibits retaliation against an employee based on her insistence upon her rights under the ADA. 42 U.S.C.A. § 12203(a); *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir.1997). Norman claims that she was retaliated against for insisting upon reasonable accommodation for her disability. The court finds a question of fact exists as to this claim, and, adopting the reasoning in both the preceding ADA section and the FMLA retaliation

---

**8.** This question of fact as to her duties distinguishes the recent Eleventh Circuit case of *Earl v. Mervyns, Inc.*, 207 F.3d 1361 (11th Cir.2000), in which a store area coordinator with obsessive compulsive disorder was found to be unable to perform the essential functions of her job, and her termination for excessive tardiness was found not to violate the ADA. Likewise, in distinguishing *Jackson v. Veterans Admin.*, 22 F.3d 277, 278 (11th Cir. 1994), the court is not convinced that Norman's presence on a rigid, regular schedule was an essential component of her job.

section, denies Southern Guaranty's motion as to this claim.[9]

■ Contrary to Southern Guaranty's assertion, there *is* evidence that Norman engaged in statutorily protected expression by requesting a reasonable accommodation both before and after her FMLA-approved absence. Two of her supervisors knew of her absences and the medical reasons behind them. To require Norman to ask specifically for a "reasonable accommodation," rather than interpreting her requests for time off as such a demand, forces knowledge of the intricacies of the law the persons who Congress has declared to be vulnerable. An insistence on this technicality would defeat the purpose of the ADA and similar civil rights legislation.

### E. Negligence Claims

Finally, Norman presents an array of state-law negligence-based claims. Norman contends that Southern Guaranty negligently trained, supervised, and retained its employees that were responsible for compliance with the FMLA and ADA, resulting in harm to Norman when those employees misapplied those statutory schemes to her absences. She also claims that Southern Guaranty acted negligently in general in the circumstances of this case.

Of course, there is a question of federal preemption: whether the FMLA and ADA preempt state causes of action that are based on the misapplication of those federal statutes or on conduct regulated by those statutes.[10] However, because there is no binding Eleventh Circuit precedent on the issue and because the issue was not raised or briefed by the parties, it will not be fully addressed in this order. Rather, the focus here is on whether Alabama, applying its own general body of tort law, would recognize a cause of action in this context. Cf. *Tectonics v. Castle Construction Co.*, 496 So.2d 704 (Ala.1986) (Alabama would not use Small Business Act, 15 U.S.C.A. § 631(a), as standard in determining fraud, unjust enrichment, or interference with business relations).

■ It appears that the Alabama Workers' Compensation Act preempts all other causes of action against an employer under state law based on negligent harm inflicted on an employee by a co-employee. 1975 Ala.Code § 25–5–14.[11] Therefore, all

---

9. The analysis for retaliation actions under the ADA is similar to the analysis required by *McDonnell Douglas* (and, by extension, the FMLA). *Stewart*, 117 F.3d at 1287. Therefore, to establish a retaliation claim under the ADA, the plaintiff must show (1) statutorily protected expression, (2) adverse employment action, and (3) a causal link between the expression and the adverse action. *Griffin v. GTE Florida, Inc.*, 182 F.3d 1279, 1281 (11th Cir.1999). Norman's expression is discussed in the body of the ADA discrimination and retaliation sections, and the other elements substantially flow from the FMLA discussions.

10. Some courts have concluded that the FMLA provides a comprehensive remedial scheme that preempts state-law claims of this sort. *Kiely v. Univ. of Pittsburgh Med. Ctr.*, 2000 WL 262580, at *17–*18 (W.D.Pa. January 20, 2000) (holding that the FMLA preempts state-law negligence claims); *Kilvitis v. County of Luzerne*, 52 F.Supp.2d 403, 418 (M.D.Pa.1999) (holding that the FMLA preempts § 1983 action); *Desrochers v. Hilton Hotels Corp.*, 28 F.Supp.2d 693, 695 (D.Ma.1998) (state civil-rights cause of action); *Vargo–Adams v. U.S. Postal Service*, 992 F.Supp. 939, 944 (N.D.Ohio 1998) (state-law wrongful discharge). Still other courts allow state-court claims to proceed, finding that there is no indication that Congress intended to completely preempt state-law causes of action in the area. *Arthur v. Armco, Inc.*, 122 F.Supp.2d 876, 880 (S.D.Ohio 2000); *Bellido–Sullivan v. American Int'l Group, Inc.*, 123 F.Supp.2d 161, 165–66 (S.D.N.Y.2000).

11. That statute reads in part:

"The legislature finds that actions filed on behalf of injured employees against officers,

of Norman's negligence-based claims are due to be dismissed; Alabama law itself does not allow them to proceed.

■■■■■ The claims of negligent training, supervision, and retention, in addition, would also deserve to be dismissed on their merits. Alabama recognized a cause of action for negligent training or supervision in *Big B, Inc. v. Cottingham*, 634 So.2d 999, 1002–03 (Ala.1993). According to that court, "liability depends upon its being established by affirmative proof that such incompetency was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge." *Id.* at 1003 (quoting *Lane v. Central Bank of Alabama, N.A.*, 425 So.2d 1098, 1100 (Ala. 1983)). Evidence of this actual or constructive knowledge may consist of specific acts of incompetency brought to the master's attention or a pattern of incompetent acts such that the character, frequency, and seriousness of the acts must have brought the incompetency to the master's attention in the exercise of due care. *Id.* A plaintiff must also show that the above breach of the employer's duty to reasonably supervise his or her employees proximately caused the plaintiff's injury. *Keel v. Banach*, 624 So.2d 1022, 1026 (Ala.1993) (stating that there are four elements of negligence in Alabama: (1) a duty; (2)

breach of the duty; (3) proximate cause; and (4) injury arising therefrom).

■■■■■ As Norman's prescriptive FMLA claims have been dismissed, the only wrongs in this case are those involving affirmative discrimination or retaliation under the FMLA or ADA. Based on this view of the alleged wrongs, for a negligent supervision and training claim to exist regarding these alleged failures, Southern Guaranty must or should have known *not* of its employees' propensity to misapply the FMLA or ADA, but rather of their propensity to *intentionally discriminate or retaliate* against an employee taking advantage of the protections of those statutes.[12] Norman has not alleged a continuing pattern of violations, nor, indeed, any prior discrimination or retaliation, such that the company should have been aware of the problem. Even if there was evidence that would put Southern Guaranty on notice, there is no proof that the negligent training and supervision caused the injuries in this case.

■■■■■ For substantially similar reasons, summary judgment should also be entered on the negligent retention claim. An employer "must use due care to avoid the ... retention of an employee whom [the employer] knows or should know is a person unworthy, by habits, temperament, or nature, to deal with the persons [he will be in contact with during his employ-

directors, agents, servants or employees of the same employer seeking to recover damages in excess of amounts received or receivable from the employer under the workers' compensation statutes of this state and predicated upon claimed negligent or wanton conduct resulting in injuries arising out of and in the course of employment · are contrary to the intent of the legislature in adopting a comprehensive workers' compensation scheme .... The intent of the legislature is to provide complete immunity to employers ... from civil liability for all causes of action except those based on will-

ful conduct and such immunity is an essential aspect of the workers' compensation scheme."

12. To the extent that Norman's argument is that Southern Guaranty is liable for negligently training and supervising its employees in the application of the ADA and FMLA, which unfamiliarity led to the opportunity to discriminate against Norman, the court finds that the relationship between such negligence and the harm in this case is too tenuous to satisfy the requirement of proximate causation.

ment]." *Brown v. Vanity Fair Mills*, 291 Ala. 80, 277 So.2d 893, 894 (1973). To recover for negligent retention in Alabama, a plaintiff must show breach of the employer's above duty and that such breach proximately caused the plaintiff's injury. *Id.* There is no evidence of such actual or constructive knowledge, nor is there an adequate causal link between this alleged breach and the injury.

## IV.  CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

(1) Defendant Southern Guaranty's motion for summary judgment, filed June 27, 2001 (Doc. no. 15), is granted on plaintiff Heidi H. Norman's FMLA prescription claim, her FLSA claim, and all her state-law claims.

(2) The motion is denied on plaintiff Norman's FMLA proscription claim and her ADA claims.

It is further ORDERED that the motion to strike filed by plaintiff Heidi M. Norman on July 30, 2001 (Doc. no. 18), is denied.